IN THE UNITED STATES COURT OF FEDERAL CLAIMS
(BID PROTEST)

|  |  |  |
|---|---|---|
| SPACE EXPLORATION TECHNOLOGIES CORP. | ) ) ) ) | Civil Action No. 14-354C |
| Plaintiff, | ) ) | Judge: Braden |
| v. | ) ) | |
| THE UNITED STATES, | ) ) | |
| Defendant, | ) ) | |
| and | ) ) | |
| UNITED LAUNCH SERVICES, LLC, | ) ) | |
| Defendant-Intervenor. | ) ) | |

**PLAINTIFF'S OBJECTION TO THE APPLICATION OF DAVID W. GERBUS**

Pursuant to Paragraph II.5 of the Protective Order, Plaintiff Space Exploration Technologies Corp. ("SpaceX") respectfully objects to the protective order application of Defendant-Intervenor's in-house counsel, David W. Gerbus.  It is clear from Mr. Gerbus's application clearly demonstrates that his admission under the protective order would create an unacceptable risk of inadvertent disclosure of SpaceX's proprietary information to its chief competitor, United Launch Alliance ("ULA").

### I.   STANDARDS FOR DECISION

A protective order is intended to "protect the supplying owner of proprietary information from any competitive harm owing to the use of such information outside of the litigation in which it was disclosed." *Ross-Hime Designs, Inc. v. United States*, 109 Fed. Cl. 725, 731 (2013) (citing *Standard Space Platforms Corp. v. United States*, 35 Fed. Cl. 505, 508-10 (1996)).

1

Protective orders are necessary because in some cases, "even the most rigorous efforts of the recipient of such information to preserve confidentiality in compliance with the provisions of such a protective order may not prevent inadvertent compromise." *In re Deutsche Bank Trust Co. Americas*, 605 F.3d 1373, 1378 (Fed. Cir. 2010).

When an attorney seeks admission under a protective order, this Court examines whether the particular attorney's admission would create an "unacceptable opportunity for inadvertent disclosure." *US Steel Corp. v. United States*, 730 F.2d 1465, 1468 (Fed. Cir. 1984) ("*U.S. Steel*"). As explained in *U.S. Steel*, "the factual circumstances surrounding each individual counsel's activities, association, and relationship with a party, whether counsel be in-house or retained, must govern any concern about inadvertent or accidental disclosure." *Id*. When examining whether there would be an unacceptable opportunity for inadvertent disclosure, the Court looks to whether the attorney is involved in competitive decisionmaking for an interested party. *Ross-Hime Designs*, 109 Fed. Cl. at 731 (citing *U.S. Steel*, 730 F.2d at 1468).

### II. ULA HAS ABSOLUTELY NO NEED FOR MR. GERBUS TO BE ADMITTED UNDER THE PROTECTIVE ORDER, AND HIS ADMISSION WILL RESULT IN AN UNACCEPTABLE RISK OF INADVERTANT DISCLOSURE.

Mr. Gerbus's narrative demonstrates that his admission under the protective order would create an unacceptable risk of inadvertent disclosure of SpaceX's proprietary information to its chief competitor. Mr. Gerbus is assistant general counsel for United Launch Alliance ("ULA"), an interested party in this protest.[1] Detailed Narrative of David W. Gerbus ("Narrative"), Doc. No. 55, at 1. Mr. Gerbus is part of a small five-person in-house counsel team, <u>all of whom</u> except (purportedly) Mr. Gerbus, "have varying degrees of involvement in competitive decision making[.]" Narrative at 2. Mr. Gerbus reports to ULA's General Counsel and Chief Executive

---

[1] ULA is the parent company for Defendant-Intervenor United Launch Services LLC.

2

Officer, both of whom partake in competitive decisionmaking on a daily basis.  Narrative at 1-3.  Were Mr. Gerbus to be admitted under the protective order, his role in ULA's small in-house team and his relationships with *every other* ULA counsel and executive officer, all of whom engage in competitive decisionmaking, would result in an unacceptable risk of inadvertent disclosure.

     Mr. Gerbus's exceedingly narrow view of competitive decisionmaking further demonstrates that his admission would result in an unacceptable risk of inadvertent disclosure.  Mr. Gerbus states that he provides "legal advice to ULA and its constituent business units" on a range of issues, in addition to overseeing "all of ULA's civil litigation and dispute resolution."  Narrative at 1.  Nearly all (if not all) of ULA's revenue is generated through the performance of government contracts with customers like the U.S. Air Force and NASA.  While Mr. Gerbus does not specialize in procurement law, his daily counsel on matters related to ULA's government contracting business qualifies as competitive decisionmaking even if he does not advise on a particular product design or help negotiate a final contract price.  *See In re Deutsche Bank*, 605 F.3d at 1378-79 ("Although pricing and product design [are] listed as specific exemplars of activity involving competitive decisionmaking, subsequent opinions have recognized that they are only two activities that might implicate or involve competitive decisionmaking.") (citing *Cummins—Allison Corp. v. Glory Ltd.*, No. 02-CV-7008, 2003 U.S. Dist. LEXIS, at *14 (N.D. Ill. Dec. 31, 2003)); *U.S. Steel*, 730 F.2d at 1468 n.3 (defining "competitive decisionmaking" as "shorthand for a counsel's activities, association, and relationship with a client that are such as to involve <u>counsel's advice and participation in any or all of the client's decisions</u> (pricing, product design, etc.) made in light of similar or corresponding information about a competitor") (emphasis added).

Many non-procurement law attorneys engage in competitive decisionmaking for their respective clients. Intellectual property attorneys, corporate attorneys, general litigation attorneys, and labor and employment attorneys all may provide "advice and participation in any or all of the client's decisions." *U.S. Steel*, 730 F.2d at 1468 n.3. A labor and employment attorney for example, may assist with the negotiation of labor or employment contracts and advise on the hiring and firing of specific personnel. When the Air Force eventually permits full and open competition between SpaceX and ULA as required by law, SpaceX will be prejudiced by ULA's knowledge of SpaceX's proprietary information related to its labor costs and personnel and salary information. Yet that is exactly what Mr. Gerbus proposes here.[2]

Finally, and perhaps most importantly, <u>there is absolutely no need to incur the risk of inadvertent disclosure that will accompany Mr. Gerbus's admission</u>. This is not a case in which Mr. Gerbus is the sole counsel or even co-counsel for ULA. ULA has seven experienced bid protest attorneys already admitted under the protective order, all of whom have a long standing relationship with their client and are quite capable of representing its interests without Mr. Gerbus's assistance. Mr. Gerbus candidly admits that he has no experience in procurement law. Narrative at 2. Consequently, he will not be providing any legal counsel that is relevant to this bid protest.[3]

---

[2] To the extent that Mr. Gerbus's counsel does not touch on ULA's government contracting business, he should provide a supplemental declaration or appear in court to address questions on this critical issue.

[3] Mr. Gerbus's lack of any relevant experience and ULA's seven other experienced attorneys stand in stark contrast *U.S. Steel*. In that case, the Federal Circuit found that where the litigation was "extremely complex and at an advanced stage," and the in-house counsel was indisputably divorced from any competitive decisionmaking, forcing the client to rely on "newly retained counsel would create an extreme and unnecessary hardship." *U.S. Steel*, 730 F.2d at 1468.

4

The reality is that Mr. Gerbus's role in this litigation will be to monitor and communicate events in the protest to his direct superiors, ULA's General Counsel and CEO, both of whom admittedly engage in competitive decisionmaking.  Mr. Gerbus's daily updates and summaries of protected documents and sealed hearings are precisely the types of communications that present an unacceptable risk of inadvertent disclosure.  The risk is made all the worse by the fact that Mr. Gerbus has never been admitted to a protective order by this Court or the Government Accountability Office, and he has no experience maintaining protected information in the context of a procurement.  Narrative at 2.

For these reasons, SpaceX respectfully requests that the Court deny Mr. Gerbus's application.

DATED: May 22, 2014

Respectfully submitted,

*Richard J. Vacura*
_____
Richard J. Vacura
MORRISON & FOERSTER LLP
1650 Tysons Blvd., Suite 400
McLean, VA 22102
(703) 760-7764
(703) 760-7777 (fax)
rvacura@mofo.com
*Counsel of Record for Plaintiff Space Exploration Technologies Corp.*

Of Counsel:

Pablo A. Nichols
Bradley D. Wine
Tina D. Reynolds
K. Alyse Latour
Catherine L. Chapple
MORRISON & FOERSTER LLP

## **CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing Plaintiff's Opposition to Application of David W. Gerbus was served on the parties this 22nd day of May, 2014, via the Court's electronic filing system.

/s/ Pablo A. Nichols
Pablo A. Nichols

sf-3419451