## IN THE UNITED STATES COURT OF FEDERAL CLAIMS
### BID PROTEST

| | |
|---|---|
| SPACE EXPLORATION TECHNOLOGIES CORP., | ) ) ) ) ) |
| Plaintiff, | ) |
| v. | ) Case No. 1:14-cv-00354-SGB ) Judge Susan G. Braden |
| THE UNITED STATES, | ) ) |
| Defendant, | ) ) |
| and | ) ) |
| UNITED LAUNCH SERVICES, LLC, | ) ) |
| Defendant-Intervenor. | ) ) |

### UNITED LAUNCH SERVICES, LLC's REPLY TO PLAINTIFF'S RESPONSE TO APPLICATION OF DAVID W. GERBUS FOR ACCESS TO INFORMATION UNDER PROTECTIVE ORDER

Defendant-Intervenor United Launch Services, LLC ("ULS") opposes the objections lodged by Plaintiff Space Exploration Technologies Corporation ("Plaintiff" or "SpaceX") against the admission of David W. Gerbus, Associate General Counsel, United Launch Alliance, LLC ("ULA"), to the protective order issued by this Court in the above-captioned case. Plaintiff's objections are based either on unfounded speculation that Mr. Gerbus—an attorney who has been admitted to more than 100 protective orders over the past two decades—might inadvertently disclose protected information to his colleagues, or on improper insinuation that Mr. Gerbus would intentionally do so and violate his ethical responsibilities as an attorney and officer of the Court. Either proposition is without merit. Furthermore, Plaintiff's response

1

ignores the extraordinary measures Mr. Gerbus has proposed to minimize any possibility of inadvertent disclosure of protected material—measures that receive no mention in Plaintiff's response.

In light of Mr. Gerbus' insulation from competitive decision making, extraordinary measures to prevent inadvertent disclosure, and the speculative nature of SpaceX's objections, there is no compelling reason why this Court should depart from the Federal Circuit's long-standing policy of respecting the parties' "right to choice of counsel" absent a demonstrated risk of inadvertent disclosure.  *U.S. Steel Corp. v. United States,* 730 F.2d 1465, 1469 (Fed. Cir. 1984).  Accordingly, we respectfully request that this Court ADMIT Mr. Gerbus to the Court's protective order over Plaintiff's objection.

I.    **The Legal Standard Used by the Court Favors a Party's "Right to Choice of Counsel" and Requires a Strong Showing of Involvement in Competitive Decision Making for Denial of Admission to a Protective Order.**

The U.S. Court of Appeals for the Federal Circuit recognizes that litigants have a general "right to choice of counsel" when deciding who to select for assistance during litigation, even when that litigation involves confidential or proprietary information requiring the issuance of a protective order.  *U.S. Steel Corp.,* 730 F.2d at 1469; *see In re Deutsche Bank,* 605 F.3d 1373, 1380 (Fed. Cir. 2010) (holding that the court must consider the full "benefit of a party's counsel of choice" and reversing district court's failure to balance that benefit).  For bid protests, the Court considers four factors in deciding whether to admit counsel to a protective order over an opposing party's objection:  1) the nature and sensitivity of the information at issue, 2) the party's need for access to the information in order to effectively represent its position, 3) the overall number of applications received, and 4) any other concerns that may affect the risk of inadvertent disclosure.  RCFC, Appx. C, Rule 18(c).

In the context of a bid protest, the main consideration affecting the risk of inadvertent disclosure of protected material is a counsel's involvement in competitive decision making. This requires the Court to determine a counsel's "advice and participation in any or all of the client's decisions (pricing, product design, etc.) made in light of similar or corresponding information about a competitor." *U.S. Steel,* 730 F.2d at 1468 n.3 (emphasis added); RCFC Appx. C, Rules Committee Notes, 2002 Revision (applying the holding of *U.S. Steel* to the Court's protective order procedures in bid protests). A finding of involvement in competitive decision making cannot be made simply by inference or innuendo. For example, an in-house counsel cannot be denied admission simply by his or her status as a corporate officer. *See U.S. Steel,* 730 F.2d at 1468. Moreover, such counsel cannot be denied admission simply because the attorney has regular contact with corporate executives that engage in competitive decision making. *See Matsushita Elec. Indus. Co. v. United States,* 929 F.2d 1577, 1579 (Fed. Cir. 1991) (reversing Court of International Trade's determination that in-house counsel engaged in competitive decision making by virtue of regular contact with decision makers); *Robbins-Gioia, Inc.,* B-274318 et al., Dec. 4, 1996, 96-2 CPD ¶ 222 (admitting in-house counsel over agency's objection where the fact that in-house counsel reported to a competitive decision maker did not alone demonstrate an unacceptable risk of inadvertent disclosure of protected material).

Rather, it is the counsel's *own actions* that matter—the counsel must personally be involved in competitive decision making, i.e. advice and participation *utilizing similar information about a competitor. Matsushita,* 929 F.2d at 1579.

In its Response, Plaintiff would have this Court adopt an erroneous legal standard in denying Mr. Gerbus's admission to the protective order. For example, Plaintiff advocates that the Court should emphasize "counsel's advice and participation in any or all of the client's

decisions" while deemphasizing the requirement that those decisions be "made in light of similar or corresponding information about a competitor."  Response at 3.  But *U.S. Steel* and its progeny require consideration of whether a counsel's decisions are made in light of a competitor's information.  *U.S. Steel,* 730 F.2d at 1468 n.3; *Matsushita Elec. Indus.,* 929 F.2d at 1579.  Furthermore, Plaintiff advocates that because "many non-procurement law attorneys engage in competitive decision making for their respective clients," Mr. Gerbus necessarily does the same as a matter of law.  Response at 4.  But *U.S. Steel* requires the court to look, counsel by counsel, at the facts of each individual case.  *U.S. Steel,* 730 F.2d at 1468 ("Whether an unacceptable opportunity for inadvertent disclosure exists, however, must be determined by the facts on a *counsel-by-counsel basis*.") (emphasis added).  Moreover, Plaintiff asks this court to rule that any attorney—even a non-procurement attorney—who advise a business where "nearly all of [its] revenue is generated through the performance of government contracts" necessarily engages in competitive decision making.  Response at 3.  Such a legal conclusion is nonsensical, as it would preclude the admission of in-house counsel from any company dedicated to federal contracting.  Such a requirement appears nowhere in *U.S. Steel* or any of the cases that follow it.

## II.     Mr. Gerbus Does Not Engage In Competitive Decisionmaking.

The application and narrative submitted and signed by Mr. Gerbus conclusively demonstrate that he does not, and will not, engage in competitive decision making on behalf of ULA or ULS.  That is, he does not advise or participate in decisions in light of a competitor's similar information.  *U.S. Steel,* 730 F.2d at 1468 n.3; *Matsushita,* 929 F.2d at 1579.  To alleviate any doubt the Court may have (and to correct Plaintiff's mischaracterizations of Mr. Gerbus's signed narrative), Mr. Gerbus has offered a Supplemental Narrative (Ex. A) attached to this Reply.

In his narrative, Mr. Gerbus states, "I do not provide any advice to ULA, ULS, or any other ULA affiliate (or any other party) in regard to procurement activities."  Narrative at 2. Plaintiff contends that Mr. Gerbus possesses an "exceedingly narrow view" of what constitutes procurement activities or competitive decision making.  Plaintiff Response at 4.  To the contrary, Mr. Gerbus's narrative demonstrates that he has a crystal clear view of what comprises competitive decision making.  Mr. Gerbus explains:

> I have never been involved in any phase of the proposal process for government contracts or other contracts.  I do not provide advice or participate in decisions regarding ULA pricing, product design or research, or product marketing made in light of similar corresponding information about a competitor.  I do not participate in or advise on business capture activities.

Narrative at 2.  Mr. Gerbus thus denied involvement in just about any activity for which SpaceX's proprietary information could be useful, including proposals, pricing, product design or research, product marketing, or business capture activities.  Plaintiff insinuates that Mr. Gerbus might engage in competitive decision making through the negotiation of labor and employment contracts or the hiring or firing of specific personnel.  However, Plaintiff has not explained how obtaining SpaceX's pricing 1/ would be relevant to providing advice regarding an employee's termination or the legal sufficiency of a labor contract.

The *Matsushita* case is directly analogous to Mr. Gerbus' representations and controls the Court's review of the Gerbus application.  In *Matsushita*, the in-house counsel applying for access to the protective order made the following representations in his signed affidavit:

---

1/      At any rate, Plaintiff's concerns about Space X "pricing" and "labor rates" are without merit. Plaintiff's stated grounds of protest involve challenges to the Air Force's decision to award a contract to ULA without competition.  There is no count in Plaintiff's Amended Complaint alleging errors in a price or cost evaluation.  Moreover, in negotiations with Plaintiff, SpaceX has circulated its draft version of a joint chronology that alleges that SpaceX merely provided the Air Force with a "Statement of Capabilities", not a price or cost proposal, for the EELV Program.  Therefore, it is inconceivable why SpaceX's cost or pricing data would appear in the Administrative Record, and any concern about Mr. Gerbus receiving cost or pricing data is a red herring.

> I am not involved in decisions of pricing and the technical design of a product.
>
> My primary responsibilities are legal in nature and my administrative duties are in connection with employee benefit plans. . . .
>
> I am not involved, nor do I become involved, in selection of vendors or the competitive business terms contained in these purchase orders. . . .
>
> At [none of the meetings I attend] am I involved in decisions involving competing products or marketing strategies. . . .
>
> My contact with the operating personnel at the factories and in the merchandising department . . . is very minimal and is in the context of a legal problem or an employee benefit matter.

*Matsushita,* 929 F.2d at 1579-80 (brackets in original).  Because the in-house counsel's

representations were not rebutted by anything in the record, the trial level court held that the

applicant was not involved in competitive decision making.  *Id.* at 1580.  The Federal Circuit

found that this determination was not arbitrary, capricious, or an abuse of discretion.  *Id.*

Similarly *,* Mr. Gerbus as an officer of the court has represented that he does not engage

in any action that could be considered competitive decision making, including pricing,

marketing, technical design, product strategy, or business capture strategies.  Moreover, Plaintiff,

like the objecting party in *Matsushita,* can point to nothing in the record rebutting Mr. Gerbus'

representations.

Instead of facts, Plaintiff offers only mischaracterizations of Mr. Gerbus' narrative.  For

example, Plaintiff represents to the Court that Mr. Gerbus stated he reports directly to ULA's

Chief Executive Officer.  Plaintiff Response at 3.  But that is not what Mr. Gerbus' narrative

states; instead, he writes, "I report directly to Kevin MacCary, Vice President, Office of Internal

Governance, and General Counsel."  Narrative at 2.  Mr. Gerbus reiterates this fact in his

Supplemental Narrative.  Ex. A at 1.  Plaintiff next mischaracterizes the Gerbus Narrative by

stating that Mr. Gerbus' supervisor, Mr. MacCary, and all other ULA counsel engage in

competitive decision making "on a daily basis."  This appears nowhere in Mr. Gerbus' narrative.

Rather, Mr. Gerbus states that Mr. MacCary "oversees all legal matters for ULA as well as ethics

and compliance matters," and that Mr. Gerbus' colleagues engage in "varying degrees of

involvement in competitive decision making"—a far cry from involvement "on a daily basis."

    Plaintiff chooses to manufacture facts out of thin air by alleging—with no proof

whatsoever, and certainly no citation to the record—that Mr. Gerbus "will . . . monitor and

communicate events in the protest to his direct superiors," including "daily updates and

summaries of protected documents."  Response at 5.  Such facts appear nowhere in Mr. Gerbus'

narrative or anywhere else.  Furthermore, especially offensive is Plaintiff's allegation that Mr.

Gerbus, a licensed attorney who *has been admitted to more than 100 protective orders* over the

past two decades, will violate the protective order by providing "summaries of protected

documents" to non-admitted persons. 2/

    To alleviate any doubt the Court may have, Mr. Gerbus represents in his Supplemental

Narrative that his role is not to provide updates or summaries of protected documents to his

Legal Department colleagues or to any operational manager at ULA or ULS, but rather to assist

outside counsel.  *See* Ex. A at 2.  On this record, the Court should find that Mr. Gerbus is not,

nor will be, involved in competitive decision making.

---

2/    Mr. Gerbus was also admitted, as in-house counsel for ULA, to a recent protective order
involving sensitive economic and proprietary data in an antitrust action brought by Orbital Sciences
Corporation, a competitor of both ULA and SpaceX in the space launch services market. *See* Narrative at
2. This should provide additional assurance to the Court that Mr. Gerbus will not, intentionally or
inadvertently, disclose protected information.

**III.   Mr. Gerbus Has Taken Extraordinary Measures to Isolate Himself from Competitive Decision Making, Reducing the Risk of Inadvertent Disclosure to a Minimal Level.**

Conspicuously absent from Plaintiff's Response is any mention of the extraordinary measures Mr. Gerbus has undertaken to isolate himself from competitive decision making.  The Court should consider these extraordinary measures as further proof that any risk of inadvertent disclosure of protected information is at worst minimal.  For example, Mr. Gerbus disclosed in his narrative that he shares a facsimile machine with his colleagues, and that therefore he should not receive protected information via that medium.  *See* Narrative at 4.  Furthermore, Mr. Gerbus will not receive or transmit protected material over the ULA/ULS network or any other electronic means.  *Id.*  Rather, Mr. Gerbus will receive documents by overnight courier to his personal residence, to reduce the risk of any disclosure to his colleagues who sit in adjacent offices at ULA Headquarters.  *Id.*

This Court has admitted in-house counsel for Lockheed Martin Corporation several times under a similar arrangement.  *See, e.g., L-3 Comms. v. United States,* No. 10-538C, Docket Entry No. 21-4 (Application of Bucky P. Mansuy) (Ex. B) (proposing an identical overnight delivery method and identifying previous admissions to the Court's protective orders).  Moreover, the Government Accountability Office has ruled in similar circumstances that extraordinary measures to reduce the risk of inadvertent disclosure to an acceptable level warrant admission of counsel over an opposing party's objection. 3/  *See Mine Safety Appliances Co.,* B-242379 et al., Nov. 27, 1991, 91-2 CPD ¶ 506 at 4-5 (admitting attorney who shared offices with a competitive decision maker of an interested party, where attorney proposed "special procedures to protect the information" such as a locked cabinet, sign-out sheet, and prohibiting entry of protected material

---

3/      GAO applies the same *U.S. Steel* legal standard for competitive decision making used by this Court.  *See, e.g., Mine Safety Appliances Co., supra.*  Accordingly, the Court should consider GAO decisions regarding admission of in-house counsel as highly persuasive authority.

into automated data processing equipment); *U.S. Sprint Comms. Co.,* B-243767, Aug. 27, 1991, 91-2 CPD ¶ 201 at 3-4 (admitting in-house attorney over protester's objection where counsel was "walled off" from competitive decision making despite her involvement in procurement litigation, and where she was able to "safeguard protected material at the [awardee]'s premises").

In light of these extraordinary measures proposed by Mr. Gerbus, the Court should have confidence that the risk of inadvertent disclosure of protected material has been reduced to a minimal level.

## IV.    ULS Has a Demonstrated Need for Mr. Gerbus's Assistance.

Plaintiff has made the extraordinary and self-serving conclusion that ULA and its retained counsel have "no need" for Mr. Gerbus' services.  Plaintiff Response at 4.  Not only is this allegation highly insulting, it is quite simply wrong.  As stated in his narrative, Mr. Gerbus has over twenty years of litigation experience in federal and state courts.  Narrative at 2. Contrary to Plaintiff's unfounded assertions, Mr. Gerbus will provide a wealth of experience to retained counsel in identifying relevant facts and crafting persuasive arguments, as well as a fresh perspective unencumbered by years in the procurement law trenches.  Moreover, should evidence or affidavits from ULA or ULS witnesses be necessary, Mr. Gerbus will be able to identify the most relevant point of contact in a manner that counsel not having access to the facts or allegations at issue will not possess.

Moreover, this Court considers the number of applications for protected material in ruling on objections to admission.  *See* RCFC, Appx. C, Rule 18(c).  Plaintiff has submitted applications for the admission of *twelve attorneys and four consultants,* sixteen people in all. 4/

---

4/    Counsel for ULS and SpaceX negotiated mutually acceptable restrictions to resolve ULS's concerns regarding the applications submitted by SpaceX for admission of outside consultants from Berkeley Research Group.  This resulted in Plaintiff's submission of four "corrected" applications.  *See*

*See* Docket Entry Nos. 29-34, 37-42, 60-63.  In contrast, ULS only has eight attorneys admitted, not counting Mr. Gerbus.  *See* Docket Entry Nos. 44-51.  Plaintiff enjoys, within reasonable limits, the right to choose which counsel may assist in its case, and ULS has refrained from objecting to what a casual observer might view as overkill.  All ULS asks is that Mr. Gerbus be afforded similar treatment.

Accordingly, ULS respectfully requests that the Court ADMIT Mr. Gerbus to the Court's Protective Order over Plaintiff's objection.

Dated:  May 26, 2014                                   Respectfully submitted,


OF COUNSEL:
                                                       /s/ Michael F. Mason_____
Thomas L. McGovern, III                                Michael F. Mason
C. Peter Dungan                                        HOGAN LOVELLS US LLP
HOGAN LOVELLS US LLP                                   555 13th Street, NW
                                                       Washington, D.C. 20004
Jason A. Carey                                         (202) 637-5499- Phone
MCKENNA LONG & ALDRIDGE LLP                            (202) 637-5910- Fax
                                                       mike.mason@hoganlovells.com

---

Docket Entry Nos. 60-63. In contrast, Plaintiff did not precede its "Response" to Mr. Gerbus' application with any attempt to resolve Plaintiff's objections or concerns with ULS without the Court's assistance.